**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| IT'SUGAR LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>I LOVE SUGAR, INC., THE M COY )<br>GROUP, LLC, and BLU SOL DESIGN, )<br>LLC, )<br><br>Defendants. ) | Civil Action No. _____<br><br>**COMPLAINT**<br>**JURY DEMAND** |

IT'SUGAR LLC, by and through its attorneys, as and for its Complaint against Defendants I Love Sugar, Inc., The MCoy Group, LLC, and Blu Sol Design, LLC, alleges as follows.

## NATURE OF THE CASE

This is an action at law and in equity for unfair competition, false designation of origin, and trademark infringement arising under the Federal Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. (the "Lanham Act") and the common law, and deceptive trade practices under South Carolina Law.

## THE PARTIES

1.     Plaintiff IT'SUGAR LLC ("Plaintiff") is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 3155 SW 10th Street, Deerfield Beach, Florida 33442.

2.     Defendant I Love Sugar, Inc. ("I Love Sugar") is, on information and belief, a corporation organized and existing under the laws of the State of South Carolina, having a place of business at 1301 North Ocean Boulevard, Myrtle Beach, South Carolina 29577.

{01459752.1}

3.      Defendant The M Coy Group, LLC ("MCoy") is, on information and belief, a limited liability company organized and existing under the laws of the State of Ohio, having a place of business at 5331 Commerce Parkway West, Parma, Ohio 44130.

4.      Defendant Blu Sol Design, LLC ("Blu Sol") is, on information and belief, a limited liability company organized and existing under the laws of the State of Michigan, having a place of business at 51194 Romeo Plank Road, Macomb, Michigan 48042.

## JURISDICTION AND VENUE

5.       This Court has personal jurisdiction over the Defendants by reason of their transaction of business in the State of South Carolina and in this judicial district, and the commission of tortious acts within the State of South Carolina and this judicial district having an injurious effect on Plaintiff in this judicial district.

6.      The subject matter jurisdiction of this Court is based upon 15 U.S.C. § 1121, 28 U.S.C §§ 1331 and 1338(a) and (b), and the doctrine of pendant jurisdiction.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because this is an action brought pursuant to the federal trademark laws, 15 U.S.C. § 1051 *et seq.*, Defendants conduct business in this judicial District, and a substantial part of the events giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

### Plaintiff's Distinctive and Nonfunctional Trade Dress and Trademark

8.   In 2006, Plaintiff conceived and developed an entirely different concept for candy stores that redefined candy retailing from a visual and marketing perspective.  Plaintiff named the new store IT'SUGAR.

{01459752.1}                              2

9.     The IT'SUGAR trademark is the subject of incontestable United States Trademark Registration No. 3,399,718 for "retail store services featuring bulk candy, novelty candy, confectionary-based goods, chocolate, nuts, dairy products, baked goods, candy-related merchandise and gift items".  This registration issued on March 18, 2008, and is in full force and effect.  A copy of the registration certificate for the IT'SUGAR mark is attached as Exhibit 1 to this Complaint.

10.   At the time Plaintiff developed the IT'SUGAR concept, the majority of candy stores were either "old fashioned nostalgic themed" or very child-like.  The IT'SUGAR concept broke this mold by specifically marketing to customers in their teens and twenties.  To achieve this goal, the look of the IT'SUGAR stores was critical – the stores had to capture the attention of this demographic and persuade these prospective customers that this is a candy store created for them in which shopping will be a "cool" experience.  This meant combining notions of optimism, indulgence, irreverence, spontaneity, boldness, energy, fashion, fantasy, pleasure, color and fun in a single store environment.

11.   To create this new look, everything in and around the IT'SUGAR store was designed to incorporate all of these concepts and to be as far removed as possible from the perceived notion of what a candy store should look like.  The fixtures, displays, wall and ceiling graphics, the manner in which the candy products are presented, as well as the lighting and amplified music, had to shout that this is not your typical candy store.

12.   As a result of this creative process, all IT'SUGAR stores are instantly recognizable by consumers due to a consistent appearance that conveys a cool, "cheeky" attitude in an irreverent environment that is unique among retail candy stores.  This is the IT'SUGAR "brand mojo".  Photographs showing representative IT'SUGAR stores are attached as Exhibit 2 to this Complaint.

13.  Key to the unique and distinctive look of the IT'SUGAR stores are their "fixtures". These unique bulk candy fixtures feature three tiers holding round, acrylic candy bins shaped like bowls with adjacent recessed receptacles having scoops and bags that enable the customer to purchase any desired quantity of candy.  Some of these units have back lighting on the first two tiers.  The bulk candy units come in four shapes: round, bean, cloverleaf and lollipop.  The design specifications and photographs of these fixtures are attached as Exhibit 3 to this Complaint.  The most common shape appearing in IT'SUGAR stores is round, as depicted below.



14.  Plaintiff's lollipop fixture features a vertical pole on which six large circular discs are fastened at slanted angles.  Each disc contains numerous holes in which the lollipops are inserted for display and sale as depicted below.  Some lollipop tree fixtures have a "marketing arm" attached to the pole on which a banner can be fastened.  The design specifications and a photograph of this fixture are attached as Exhibit 4 to this Complaint and depicted below.



15.   These bulk candy and lollipop fixtures, which have been custom designed and manufactured for IT'SUGAR, are imbued with a style and design previously unknown in the retail candy field.  These fixtures alone set Plaintiff's stores apart from all other candy stores, candy departments and candy sections within retail stores.  For example, other candy stores use typical wire racked shelves with standard Lucite candy boxes or gravity fed dispensing units off the wall.  Representative photographs of these types of fixtures are attached as Exhibit 5 to this Complaint.

16.   The unique design of Plaintiff's bulk candy and lollipop fixtures are the exclusive property of Plaintiff.  None of these fixture shapes nor the backlighting on the tiers is essential for displaying products.  The shapes add nothing to the usefulness, strength, or integrity of the fixtures.  Instead they actually increase the cost of manufacturing the fixtures and result in the

fixtures occupying more floor space than alternative displays. They therefore serve entirely to convey Plaintiff's unique IT'SUGAR brand to consumers. Nor are IT'SUGAR's fixtures essential to operating a retail candy store. Indeed, hundreds, if not thousands of other candy stores compete freely with IT'SUGAR without copying any of IT'SUGAR'S creative fixtures

17. As such, Plaintiff's fixtures are inherently distinctive in that they do not describe any of Plaintiff's products or any of the services provided by the IT'SUGAR stores. These distinctive and nonfunctional fixtures are arbitrary and fanciful means of displaying Plaintiff's products.

18. The bulk candy and lollipop fixtures are in every IT'SUGAR store throughout the United States. Because of their design and size, and their prominent locations on the sales floor, the public immediately identifies these fixtures with Plaintiff.

19. Another feature common to all IT'SUGAR stores that contributes to the distinctive IT'SUGAR look is the prominent use of large, irreverent, and funny photographs on the walls surrounding the sales floor of young women holding, wearing or licking candy. Quite often these photographs include statements such as "You are what you eat." and "Who you calling a sucker?" Representative photographs are attached as Exhibit 6 to this Complaint. These distinctive and nonfunctional features are arbitrary and fanciful means of marketing Plaintiff's products. The bulk candy fixtures and/or lollipop fixtures and these wall graphics together comprise an inherently distinctive and nonfunctional trade dress (the "IT'SUGAR Trade Dress").

**Success of the IT'SUGAR Stores**

20. The presence of Plaintiff's bulk candy and lollipop fixtures and wall graphics in more than 40 stores throughout the United States in major metropolitan areas and other high traffic locations has exposed the IT'SUGAR Trade Dress to millions of consumers. By virtue of this prominent, extensive and widespread use across the country for a number of years, the

IT'SUGAR Trade Dress has become well known to the public as a source of Plaintiff' products and services.

21.  The first IT'SUGAR store opened in 2006 in Atlantic City, New Jersey and there are currently more than 40 stand-alone IT'SUGAR stores in various locations throughout the United States, including indoor shopping malls and airports. Plaintiff also operates as a store-within-a-store in Macy's department stores, Madame Tussaud's Wax Museum in New York City and the New York New York Hotel and Casino in Las Vegas.  Pages from Plaintiff's web site, *www.itsugar.com*, showing the locations of all IT'SUGAR stores in the United States are attached as Exhibit 7 to this Complaint.

22.  Plaintiff's product sales have enjoyed tremendous growth and success since the first IT'SUGAR store opened.  Sales exceeded $9 million in 2008, $15 million in 2009, $19 million in 2010, $29 million in 2011, and $43 million in 2012 – totaling over $115 million.  Plaintiff projects its 2013 sales to be over $60 million.

23.  Plaintiff has spent in excess of $1 million advertising and promoting its brand in the past five years.  Representative advertising and marketing materials are attached as Exhibit 8 to this Complaint.

24.  Plaintiff's innovation, creativity, and success has recently been reported in a national business publication. A copy of the article "A Candy Chain's Sweet Success," published in the July 1, 2013, edition of *Fortune Magazine* (released on June 14, 2013) is attached as Exhibit 9 to this Complaint.

**Myrtle Beach IT'SUGAR Store and Trade Dress**

25.  On May 24, 2008, the IT'SUGAR store in Myrtle Beach, South Carolina opened at 1211 Celebrity Circle, in the city's premiere shopping destination, "Broadway at the Beach".

26.   The Myrtle Beach IT'SUGAR store includes all the distinctive and nonfunctional elements of the IT'SUGAR Trade Dress described above in Paragraphs 11 through 19 of this Complaint that characterize the cool, cheeky, irreverent look of all IT'SUGAR stores. Photographs of this store are attached as Exhibit 10 to this Affidavit.

27.   Other aspects of the Myrtle Beach IT'SUGAR store that contribute to this store's unique and inherently distinctive look in its market include:

• Exterior façade with large, colorful lollipop swirls in combination with the IT'SUGAR name.  A photograph is attached as Exhibit 11 to this Complaint.

• Cash register "wrap" with a backlit base and a shelf displaying products.  A photograph is attached as Exhibit 12 to this Complaint.

• Shelved column display with non-candy merchandise. A photograph is attached as Exhibit 13 to this Complaint.

• Curved wall of M&M candies in long vertical dispenser tubes.  A photograph is attached as Exhibit 14 to this Complaint.

These distinctive and nonfunctional fixtures are arbitrary and fanciful means of displaying Plaintiff's products.  These elements, together with the elements of the IT'SUGAR Trade Dress, also constitute the inherently distinctive and nonfunctional trade dress of the Myrtle Beach IT'SUGAR store (the "Myrtle Beach IT'SUGAR Store Trade Dress").

28.   Since its inception, the Myrtle Beach IT'SUGAR store has been a success.  It is among Plaintiff's highest grossing stores with sales exceeding $1.8 million in 2008, 2.5 million in 2009, $2.5 million in 2010, $2.9 million in 2011, and $2.9 million in 2012.  Projected sales for 2013 exceed $3 million.  By virtue of this prominent, extensive, and widespread use in the Myrtle Beach area for a number of years, the Myrtle Beach IT'SUGAR Store Trade Dress has become well known to the public as the source of Plaintiff's products and services.

**Companies Hired by Plaintiff to Design the Look of the IT'SUGAR stores.**

29.   In 2006, Plaintiff retained the firm Markham Unlimited to assist in creating product branding and interior store design concepts for the IT'SUGAR stores. These included developing the "brand mojo", *i.e.*, the concept with which Plaintiff targets and markets to people in their teens and twenties with a cool, "cheeky," irreverent approach that attracts these consumers to a candy store.  Markham Unlimited's services for Plaintiff included store environment design, logo creation, designs for product labels and packaging, creation of private labels, and merchandising for the non-candy products

30.   In 2011, Plaintiff retained the firm Brandberry, Inc. to create product branding concepts, elements, designs, and sayings for Plaintiff including graphic designs for Plaintiff's private label packaging, store signage and walls.  Brandberry also helped create a style guide to ensure consistency in the overall brand, look, feel and visual identity of the IT'SUGAR stores and products.  Brandberry works so closely with Plaintiff that it maintains its office inside Plaintiff's corporate office.

31.   In 2008, MCoy, which manufactures and installs fixtures and displays for retail stores, was retained by Plaintiff to manufacture the bulk candy fixtures, lollipop fixtures and cash register bases described above in Paragraphs 13, 14, and 27 for IT'SUGAR stores.  Shop drawings of the fixtures prepared by MCoy based on Plaintiff's designs are attached as Exhibit 15 to this Complaint.  In particular, MCoy's services were used for fixture fabrication for the IT'SUGAR stores in Myrtle Beach, Universal CityWalk in Los Angeles, Plaza Bonita Mall, Queens Center Mall, Jersey Shore Outlets, Orlando Premium Outlets, Baystreet at Emeryville, Grapevine Mills, Sawgrass Mills, and Branson Landing; the IT'SUGAR kiosk at New York New York Hotel & Casino; the IT'SUGAR shop in Madame Tussaud's in New York City;  and the IT'SUGAR kiosk at Citi Field baseball stadium where the New York Mets play.  Because of this,

upon information and belief, MCoy has detailed knowledge of the designs, configurations, and specifications of Plaintiff's bulk candy fixtures, lollipop fixtures, and cash register bases.

32.    Blu Sol designs displays, layouts, and other features for retail stores.   While employed by JGA (Jon Greenberg Assoc.), a retail design, brand strategy and architectural firm, Michael Benincasa (who now works for Blu Sol) was the project manager for a design proposal for Plaintiff.   The project was not realized, but because of that proposal, upon information and belief, Blu Sol obtained detailed knowledge of the overall look and direction that the IT'SUGAR stores were taking.

**Defendant I Love Sugar's Infringing Acts**

33.   In March, 2013, Defendant I Love Sugar had begun construction of a retail candy store at 919 North Ocean Boulevard in Myrtle Beach, South Carolina. This store is just a few minutes drive from the IT'SUGAR Myrtle Beach store.

34.   Upon information and belief, David Oaknin, the principal of the I Love Sugar store, had previously been involved in the operation of retail stores in Myrtle Beach, including a t-shirt store that opened in 2012 approximately 100 feet from the Myrtle Beach IT'SUGAR store.

35.   Upon information and belief, on or around March 18, 2013, I Love Sugar posted on the *ilovesugar.com* web site a rendering of the store exterior.   A copy of this posting is attached as Exhibit 16 to this Complaint.   Additional renderings of the exterior of the proposed I Love Sugar store were posted on I Love Sugar's Facebook page on February 16 and March 14, 2013. Copies of these Facebook pages are attached as Exhibit 17 to this Complaint.

36.   Upon information and belief, Blu Sol posted a rendering of the proposed interior of the I Love Sugar store on the Blu Sol Design Facebook page on February 3, 2013.   A copy of this page is attached as Exhibit 18 to this Complaint.

37.  Upon information and belief, in April, 2013, a sign was posted on the construction site at 919 North Ocean Boulevard in Myrtle Beach announcing the I Love Sugar store and displaying a rendering of the proposed exterior of the store. A photograph is attached as Exhibit 19 to this Complaint.

38.  The renderings of the I Love Sugar store were a copy of the IT'SUGAR stores. Examples of features from the renderings that were copied are the round bulk candy fixtures, lollipop fixtures, irreverent posters of women on the walls, use of lollipop swirls on the exterior store sign, and a curved wall of vertical candy tube dispensers that have been used as core features of the IT'SUGAR brand.

39.  Upon information and belief, as a result of the publications of these renderings, consumers were actually confused into believing that the I Love Sugar store was an IT'SUGAR store, when in fact it is not.

40.  Upon information and belief, beginning around March 2013, numerous individuals came into the Myrtle Beach IT'SUGAR store asking questions about the I Love Sugar store such as "Is that your new location?"; "Why are you opening another store so close?"; and "When are you opening your new location?"

41.  Upon information and belief, from mid-March to early April, 2013, the Myrtle Beach IT'SUGAR store received several telephone calls from different marketing companies inquiring whether the "new" IT'SUGAR store in Myrtle Beach wanted to advertise and offer coupons in coupon books distributed to the general public. Upon information and belief, these inquiries were intended for the I Love Sugar store.

42.  Upon information and belief, in March 2013, the Myrtle Beach IT'SUGAR store received a telephone call from a company that installs building security equipment inquiring whether there was any interest in using its products and services in the "new" IT'SUGAR store in Myrtle Beach. Upon information and belief, this inquiry was intended for the I Love Sugar store.

43.  In April 2013, I Love Sugar posted notices on its Facebook page for a May 1st and 2nd, 2013 job fair at the Good Time Charley's restaurant at Celebrity Square, which is very near the IT'SUGAR store.  This job fair notice included a rendering of the outside of the I Love Sugar store and is attached as Exhibit 20 to this Complaint.

44.  Upon information and belief, the job fair created additional instances of confusion. Almost immediately after the notice of the job fair was posted, the Myrtle Beach IT'SUGAR store received numerous employment inquiries from people who believed that the I Love Sugar store was related to or affiliated with the IT'SUGAR store.

45.  By its acts, I Love Sugar intended to copy not only the look of the IT'SUGAR stores, but it intended to copy the way Plaintiff does business as well.

46.  Upon information and belief, in a telephone conversation in March 2013, Oaknin asked a principal of a major national seller of candy and confectionary products very specific questions concerning the items sold to IT'SUGAR stores. Oaknin also stated to this person that he had visited the IT'SUGAR store in Myrtle Beach numerous times to gain an understanding of the business of operating a retail candy store.  His comment was "if it's not broken, why fix it?" On the same day as this telephone conversation, Oaknin sent an e-mail to this person with a rendering of the proposed interior of the I Love Sugar store which this person believed looked like an IT'SUGAR store.

47.   Upon information and belief, by March 2013, Oaknin had visited the Myrtle Beach IT'SUGAR store on numerous occasions.   On at least one occasion, he attempted to recruit employees of the store to work in the I Love Sugar store.   He appeared to have an intimate knowledge of the managers and supervisors of the Myrtle Beach IT'SUGAR store, their job titles and even their salaries.   They all refused Oaknin's offers of employment.

48.   Upon information and belief, not only did Oaknin try to recruit current employees from the Myrtle Beach IT'SUGAR store, he also reached out to and tried to recruit former employees of Plaintiff as well as current and former third-party vendors who helped build Plaintiff's business.

49.   Upon information and belief, I Love Sugar retained MCoy to build and install, *inter alia*, the round bulk candy fixtures, the "bean" shaped bulk candy fixture, the lollipop fixture, and the cash register wrap base for the I Love Sugar store.

50.   Upon information and belief, Markham Cronin, founder and President of Markham Unlimited, received an e-mail through Markham Unlimited's Facebook site from Oaknin which stated that Oaknin was interested in the work Markham Unlimited had done for IT'SUGAR and wanted to discuss it with him.   In a subsequent telephone conversation, Oaknin requested Markham Unlimited's branding services for the I Love Sugar store.   Because of Markham Unlimited's longstanding relationship with Plaintiff, Cronin declined Oaknin's request.

51.   Upon information and belief, Oaknin contacted Ashley Mady, President of Brandberry, Inc., in April, 2013.   Oaknin sent an e-mail to Mady stating that he loved the work Brandberry did for Plaintiff.   In June 2012, Oaknin sent an e-mail to Mady requesting Brandberry's services for a new retail store that would have a concept similar to that of IT'SUGAR stores.  Mady declined Oaknin's request.

52.  Upon information and belief, in October 2012, Oaknin contacted Sean Roberts, who had been employed by Plaintiff from 2006 through 2011 as a Project Manager to oversee the opening of IT'SUGAR stores around the country and to order and oversee the installation of the fixtures and graphics in those stores.  Roberts returned to Plaintiff in January 2013 and is currently the Repair and Maintenance Manager for IT'SUGAR stores.  Oaknin had contacted Roberts during the period he was not employed by Plaintiff and requested information about developing and operating the IT'SUGAR stores.  Oaknin also sought to hire Roberts for the I Love Sugar store.  Roberts refused.

53.  Upon information and belief, Oaknin contacted Tina Goldkind, who had been employed by Plaintiff from 2006 through 2008 and involved in opening IT'SUGAR stores around the country.  Oaknin requested information from Goldkind about branding, imaging, and packaging design for the IT'SUGAR stores.  Oaknin also sought to hire Goldkind for the I Love Sugar store.  She refused.

54.  The I Love Sugar store opened on June 1, 2013, and proved to be a slavish copy of the overall look and feel of IT'SUGAR stores, and of the Myrtle Beach IT'SUGAR location in particular.  Oaknin's thorough investigation of Plaintiff and the resulting confusing similarity of the stores clearly represents a successful effort to trade on the goodwill that Plaintiff spent so much time and expense developing.

55.  Even before a consumer walks into the I Love Sugar store, just the name of the store together with the accompanying signage above its front entrance would cause the consumer to believe that the I Love Sugar store is an IT'SUGAR store, or is at least affiliated with IT'SUGAR.  The I Love Sugar storefront signage features the I Love Sugar name plus a lollipop swirl design very similar to the lollipop swirl design that appears on the front and side of the

Myrtle Beach IT'SUGAR store.  There is no reason for I Love Sugar to have used the lollipop swirl design on the storefront signage other than to confuse consumers and trade on the goodwill of Plaintiff.  The fact that the I Love Sugar store is only a few minutes drive from the IT'SUGAR store compounds the similarity of the names and lollipop designs.  Photos comparing the exterior signage of the I Love Sugar store and the exterior signage of the IT'SUGAR Myrtle Beach Store are attached as Exhibit 21 to this Complaint and depicted below.



56. Walking into the I Love Sugar store further compounds a consumer's confusion.  A consumer immediately sees the following features, which intentionally copy the IT'SUGAR Trade Dress:

> • Three backlit round bulk candy fixtures and a bean-shaped bulk candy fixture that are virtually identical to Plaintiff's bulk candy fixtures.  Photographs are attached as Exhibit 22 to this Complaint.

> •  A lollipop fixture that is virtually identical to Plaintiff's lollipop fixture. Photographs are attached as Exhibit 23 to this Complaint.

• Irreverent statements interspersed on the walls much like those featured in IT'SUGAR stores, such as "Eat your heart out" and "A balanced diet is candy in each hand". Photographs are attached as Exhibit 24 to this Complaint.

57. Even further compounding the confusion, the I Love Sugar store mimics every element and the entire look of the Myrtle Beach IT'SUGAR Store Trade Dress, which is also immediately apparent to any consumer walking into the store. In particular, the I Love Sugar store imitates:

• The back-lit cash register wrap base with a top shelf displaying products. A photograph is attached as Exhibit 25 to this Complaint.

• The curved wall with numerous vertical tubes dispensing M&M® candies. A photograph is attached as Exhibit 26 to this Complaint.

• The shelved column unit holding non-candy merchandise. A photograph is attached as Exhibit 27 to this Complaint.

• Three-way product fixtures. A photograph is attached as Exhibit 28 to this Complaint.

• A dedicated section for NERDS® candies. A photograph is attached as Exhibit 29 to this Complaint.

• A dedicated section for PEZ® candies. A photograph is attached as Exhibit 30 to this Complaint.

• A dedicated section for M&M® non-candy merchandise. A photograph is attached as Exhibit 31 to this Complaint.

58. Still even further compounding the confusion, the I Love Sugar store copied other features from IT'SUGAR stores that contribute to the unique, distinctive, and nonfunctional look of these stores, including features from Plaintiff's website, other features from the Myrtle Beach

IT'SUGAR store, and certain unique features from various IT'SUGAR stores throughout the country.  These additional copied features include:

• A large graphic of mermaids in candy outfits swimming among red colored Swedish candy fish.  This is a copy of a similar graphic recently featured at the Myrtle Beach IT'SUGAR store.  A photograph of Plaintiff's graphic is attached as Exhibit 32 to this Complaint.  A photograph of I Love Sugar's graphic is attached as Exhibit 33 to this Complaint.

• A graphic of the same mermaid swimming among red colored Swedish candy fish in an exterior framed light box.  This is a copy of a similar graphic recently featured at the Myrtle Beach IT'SUGAR store.  A photograph of Plaintiff's graphic is attached as Exhibit 34 to this Complaint.  A photograph of I Love Sugar's graphic is attached as Exhibit 35 to this Complaint.

• Graphics on the wall of three young women holding a giant gummy worm and other women eating, wearing, or holding candy. Photographs are attached as Exhibit 36 to this Complaint.  This gummy worm graphic is a copy of a graphic that has prominently appeared on the *itsugar.com* web site since February 2013 which shows three young women holding a giant gummy worm.  A photograph is attached as Exhibit 37 to this Complaint.

• A large blank wall behind the lighted cash register base with the name "I LOVE SUGAR" over a heart design. A photograph is attached as Exhibit 38 to this Complaint.  This is a copy of the wall behind the cash register wrap base in the Los Angeles IT'SUGAR store in which the IT'SUGAR word mark and the IT'SUGAR design mark appear behind the store's cash registers. A photograph is attached as Exhibit 39 to this Complaint.

59.  Nearly every element of the I Love Sugar store is a close copy of the distinctive and nonfunctional IT'SUGAR Trade Dress and the Myrtle Beach IT'SUGAR Store Trade Dress and is the culmination of a deliberate effort to copy virtually everything that creates the unique look of the IT'SUGAR stores.   These similarities in the I Love Sugar store will confuse consumers into believing, and have already actually caused consumers to believe, that the I Love Sugar store is an IT'SUGAR store, or is somehow affiliated with or endorsed by Plaintiff, when in fact it has not.  Indeed, on the first day that the I Love Sugar store opened, upon information and belief, Plaintiff's District Manager, Linda Roberts, visited the I Love Sugar store and overheard a conversation between two shoppers and a person who appeared to be an I Love Sugar store employee.   One of these shoppers asked the employee if this store was the same as the IT'SUGAR store that is at Broadway at the Beach.  More recently, on or about June 12, 2013, at least ten individuals entered the Myrtle Beach IT'SUGAR store seeking to redeem one or more coupons for candy. These coupons were issued by the I Love Sugar store.

60.  No part of the IT'SUGAR Trade Dress or the Myrtle Beach IT'SUGAR Store Trade Dress is essential to operating a retail candy store.  Hundreds, if not thousands, of other candy stores compete freely with IT'SUGAR without copying any of IT'SUGAR'S creative fixtures or graphics.

**The I Love Sugar Store Will Irreparably Harm Plaintiff**

61.  Plaintiff is being and will continue to be irreparably harmed by I Love Sugar's infringing store.  I Love Sugar opened its store at the beginning of the summer tourist season, which is the biggest sales period for the Myrtle Beach IT'SUGAR store.  Indeed, sales between Memorial Day and Labor Day account for approximately 56 % of the store's annual revenues.

62. The I Love Sugar store has already caused damage to the IT'SUGAR store in Myrtle Beach, and will continue to cause damage to that store. Prior to June 1, 2013, the Myrtle Beach IT'SUGAR store sales for 2013 had been 3.2% *higher* than the same six month period in 2012. Since the I Love Sugar store opened on June 1, 2013, sales in the Myrtle Beach IT'SUGAR store have been 11.5% *lower* than sales during the same period, June 1 through June 11, in 2012.

63. An even greater harm than monetary loss is the harm to Plaintiff's goodwill in the marketplace. Plaintiff has no control over the I Love Sugar store, the quality and variety of its products, the manner in which the store is promoted to the public, operated, and maintained, or the training of the management and sales staff and their interactions with customers. Yet all of these aspects of I Love Sugar's operations are already affecting Plaintiff's perception among consumers who believe the stores to be operated by the same company.

64. In the highly competitive retail candy field, a store's reputation depends not only on the variety and quality of its products, but also on the store environment and factors such as attractiveness, cleanliness, and an attentive and courteous sales staff. Indeed, because many of the products in both the IT'SUGAR and I Love Sugar stores are national brands (e.g., M&Ms, NERDS, HERSHEY, PEZ), distinguishing reputational factors may be the most important keys to success – or failure. Plaintiff's inability to control its reputation, built largely on its valuable trade dress and trademark, creates an immediate and significant risk to Plaintiff's public image and goodwill.

65. Finally, because Myrtle Beach is a popular tourist destination, it can be expected that many of the thousands of summer visitors from all over the United States will have been in one or more of Plaintiff's other IT'SUGAR stores. Thus, I Love Sugar has seized control of Plaintiff's reputation and goodwill well beyond the Myrtle Beach region.

66. On April 26, 2013, Plaintiff sent a letter to David Oaknin at I Love Sugar demanding that he immediately and permanently discontinue installation of the fixtures for the I Love Sugar store that infringe the IT'SUGAR Trade Dress and the Myrtle Beach IT'SUGAR Store Trade Dress. A copy of this letter is attached as Exhibit 40 to the Complaint.

67. In a letter dated May 16, 2013, I Love Sugar's attorney stated that I Love Sugar "does not intend to change its name or the design of its store." A copy of this letter is attached as Exhibit 41 to the Complaint.

**Defendant MCoy's Infringing Acts**

68. Upon information and belief, MCoy manufactured and supplied to I Love Sugar, *inter alia*, round bulk candy fixtures, a bean bulk candy fixture, lollipop fixtures, and a cash register base for the I Love Sugar store that are identical or nearly identical to Plaintiff's round bulk candy fixture, bean bulk candy fixture, lollipop fixture, and cash register base.

69. MCoy has intentionally manufactured the round bulk candy fixtures, bean bulk candy fixture, lollipop fixtures, and cash register base for the I Love Sugar store in a manner that copies the IT'SUGAR Trade Dress and the Myrtle Beach IT'SUGAR Store Trade Dress. MCoy supplied these items to I Love Sugar although MCoy knew or had reason to know that I Love Sugar would use them to violate Plaintiff's rights.

70. On April 26, 2013, Plaintiff sent a letter to Michael Coy, the principal of MCoy, demanding that MCoy immediately and permanently discontinue manufacturing and installing fixtures for the I Love Sugar store that infringe the IT'SUGAR Trade Dress and the Myrtle Beach IT'SUGAR Store Trade Dress. A copy of this letter is attached as Exhibit 42 to the Complaint.

71.   Upon information and belief, MCoy proceeded to supply I Love Sugar with the fixtures anyway.  In a letter dated May 7, 2013, MCoy's attorney stated that the fixtures built by MCoy "were built in accordance with the specifications provided by I LOVE SUGAR."  A copy of this letter is attached as Exhibit 43 to the Complaint.

**Defendant Blu Sol's Infringing Acts**

72.   Blu Sol has intentionally designed the displays, graphics, layout, and overall look of the I Love Sugar store in a manner that infringes the IT'SUGAR Trade Dress and the Myrtle Beach IT'SUGAR Store Trade Dress.  Blue Sol supplied its designs to I Love Sugar although Blu Sol knew or had reason to know that I Love Sugar would use them to violate Plaintiff's rights.

73.   On April 26, 2013, Plaintiff sent a letter to Blu Sol, demanding that Blu Sol immediately and permanently discontinue all designs that are similar to Plaintiff's proprietary designs.  A copy of this letter is attached as Exhibit 44 to the Complaint.

74.   Upon information and belief, Blu Sol proceeded to supply I Love Sugar with the designs anyway.  In a letter dated May 16, 2013, Blu Sol's attorney stated that the project for the I Love Sugar store was moving forward.  A copy of this letter is attached as Exhibit 45 to the Complaint.

<u>**COUNT I – AGAINST I LOVE SUGAR**</u>

**[Federal Unfair Competition and Trade Dress Infringement, 15 U.S.C. §1125(a)]**

75.   Plaintiff repeats and realleges the averments contained in Paragraphs 1 through 74 of this Complaint as if fully set forth herein again.

76.  Plaintiff has made a substantial investment in the fixtures, displays, graphics and designs of the IT'SUGAR stores to create the unique IT'SUGAR Trade Dress and Myrtle Beach IT'SUGAR Store Trade Dress (collectively, "Plaintiff's Trade Dress").

77.  Plaintiff's Trade Dress is non-functional, distinctive, and arbitrary, and serves to identify Plaintiff as the source of candy products and other merchandise.

78.  By reason of the foregoing, consumers of candy have come to associate Plaintiff's Trade Dress exclusively with Plaintiff and Plaintiff's Trade Dress has become a strong source indicator for Plaintiff's sales of candy products and related merchandise.  Plaintiff has developed substantial goodwill in the Plaintiff's Trade Dress.

79.  I Love Sugar is using Plaintiff's Trade Dress without Plaintiff's authorization in a manner that is deliberately intended to cause confusion and to cause mistake among consumers and to deceive the public as to the affiliation, connection, or association of I Love Sugar with Plaintiff, and to deceive the public into mistakenly believing that the I Love Sugar store and the products sold in that store originate with or are sponsored or approved by Plaintiff.

80.  I Love Sugar is using a confusingly similar, intentional copy of Plaintiff's Trade Dress without Plaintiff's authorization to derive benefit from and trade upon Plaintiff's reputation and goodwill and to injure Plaintiff by diverting sales from Plaintiff's Myrtle Beach IT'SUGAR store and causing irreparable harm to Plaintiff's reputation and goodwill.

81.  Plaintiff has no control over the products, sales staff, reputation or operation of the I Love Sugar store.  Any failure, neglect, omission, or other deleterious conduct in the operation of the I Love Sugar store will reflect adversely on and cause harm to Plaintiff as the perceived source for I Love Sugar's products.

82.  I Love Sugar's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

83.  I Love Sugar's acts are likely to cause confusion, to cause mistake, and/or to deceive the public into mistakenly believing that I Love Sugar is Plaintiff or is a licensee of Plaintiff or is affiliated, connected to, or associated with Plaintiff when in fact it is not.

84.  Plaintiff is entitled to injunctive relief and to recover I Love Sugar's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §1117.

85.  Given that I Love Sugar's acts were willful and deliberate, Plaintiff is entitled to treble damages pursuant to 15 U.S.C. § 1117.

86.  Plaintiff has no adequate remedy at law.

## COUNT II – AGAINST MCOY GROUP

### [Federal Unfair Competition and
### Contributory Trade Dress Infringement, 15 U.S.C. §1125(a)]

87.  Plaintiff repeats and realleges the averments contained in Paragraphs 1 through 86 of this Complaint as if fully set forth herein again.

88.  MCoy's fixture designs which it manufactured and supplied for the I Love Sugar store include round bulk candy fixtures, the bean bulk candy fixture, lollipop fixtures and the cash register base fixture.  These fixtures are identical or nearly identical to the round bulk candy fixture, bean bulk candy fixture, lollipop fixture and cash register base fixture that comprise the Trade Dress.

89.    By manufacturing the fixtures for the I Love Sugar store without Plaintiff's authorization, and with extensive and detailed knowledge of Plaintiff's Trade Dress, MCoy deliberately contributed to cause confusion and to cause mistake among consumers and to deceive the public as to the affiliation, connection, or association of I Love Sugar with Plaintiff, and to deceive the public into mistakenly believing that the I Love Sugar store and the products sold in that store originate with or are sponsored or approved by Plaintiff.

90.    MCoy's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

91.    MCoy has contributed to cause and is likely to continue contributing to causing substantial injury to Plaintiff and the public and Plaintiff is entitled to injunctive relief and to recover MCoy's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §1117.

92.    Given that MCoy's acts were willful and deliberate, Plaintiff is entitled to treble damages against MCoy pursuant to 15 U.S.C. § 1117.

93.    Plaintiff has no adequate remedy at law.

## COUNT III – AGAINST BLU SOL DESIGN

### [Federal Unfair Competition and
### Contributory Trade Dress Infringement, 15 U.S.C. §1125(a)]

94.    Plaintiff repeats and realleges the averments contained in Paragraphs 1 through 93 of this Complaint as if fully set forth herein again.

95.  Blu Sol's designs for the displays, graphics, and overall look of the I Love Sugar store are confusingly similar to the displays, graphics, and overall look of IT'SUGAR stores that comprise Plaintiff's Trade Dress.

96.  By designing the displays, graphics, and overall look of the I Love Sugar store without Plaintiff's authorization, and with extensive and detailed knowledge of Plaintiff's stores, and by posting a rendering of the interior of the I Love Sugar store on its Facebook page as early as February 3, 2013, Blu Sol deliberately contributed to causing likely confusion and mistake among consumers and to deceive the public as to the affiliation, connection, or association of I Love Sugar with Plaintiff, and to deceive the public into mistakenly believing that the I Love Sugar store and the products sold in that store originate with or are sponsored or approved by Plaintiff.

97.  Blu Sol's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act,  15 U.S.C. §1125(a).

98.  Blu Sol has caused and is likely to continue causing substantial injury to Plaintiff and the public and Plaintiff is entitled to injunctive relief and to recover Blu Sol's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §1117.

99.  Given that Blu Sol's acts were willful and deliberate, Plaintiff is entitled to treble damages against Defendant Blu Sol pursuant to 15 U.S.C. § 1117.

100.  Plaintiff has no adequate remedy at law.

## COUNT IV – AGAINST BLU SOL DESIGN

### [Federal Unfair Competition and
### Trade Dress Infringement, 15 U.S.C. §1125(a)]

101.  Plaintiff repeats and realleges the averments contained in Paragraphs 1 through 100 of this Complaint as if fully set forth herein again.

102.  By designing the displays, graphics, and overall look of the I Love Sugar store without Plaintiff's authorization, and with extensive and detailed knowledge of Plaintiff's stores, and by posting a rendering of the interior of the I Love Sugar store on its Facebook page as early as February 3, 2013, Blu Sol deliberately intended to cause likely confusion and mistake among consumers and to deceive the public as to the affiliation, connection, or association of I Love Sugar with Plaintiff, and to deceive the public into mistakenly believing that the I Love Sugar store and the products sold in that store originate with or are sponsored or approved by Plaintiff.

103.  Blu Sol's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act,  15 U.S.C. §1125(a).

104.  Blu Sol has caused and is likely to continue causing substantial injury to Plaintiff and the public and Plaintiff is entitled to injunctive relief and to recover Blu Sol's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §1117.

105.  Given that Blu Sol's acts were willful and deliberate, Plaintiff is entitled to treble damages against Defendant Blu Sol pursuant to 15 U.S.C. § 1117.

106.  Plaintiff has no adequate remedy at law.

## COUNT V – AGAINST I LOVE SUGAR

### [Federal Trademark Infringement of an Unregistered Mark, 15 U.S.C. §1125(a)]

107.  Plaintiff repeats and realleges the averments contained in Paragraphs 1 through 106 of this Complaint as if fully set forth herein again.

108.  The IT'SUGAR name and swirling lollipop design on the façade of the Myrtle Beach IT'SUGAR store (the "IT'SUGAR & Lollipop Design Mark") constitute Plaintiff's trade mark and service mark and serve to identify the Myrtle Beach IT'SUGAR store as the source of Plaintiff's products and services.

109.  By incorporating the word "Sugar" and the letter "I" in its store name and displaying a similar swirling lollipop design on the exterior of its store along with two "I Love Sugar" store name signs, I Love Sugar is deliberately using a close imitation of the IT'SUGAR & Lollipop Design Mark without Plaintiff's authorization in a manner that is deliberately intended to cause confusion and to cause mistake among consumers and to deceive the public as to the affiliation, connection, or association of I Love Sugar with Plaintiff, and to deceive the public into mistakenly believing that the I Love Sugar store and the products sold in that store originate with or are sponsored or approved by Plaintiff.  The fact that the I Love Sugar store is only a few minutes away from the Myrtle Beach IT'SUGAR store, increases the likelihood of confusion and has, upon information and belief, already caused actual confusion.

110.  I Love Sugar's acts constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

111.  I Love Sugar has caused and is likely to continue causing substantial injury to Plaintiff and the public and Plaintiff is entitled to injunctive relief and to recover I Love Sugar's

profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §1117.

112.  Given that I Love Sugar's acts were willful and deliberate, Plaintiff is entitled to treble damages pursuant to 15 U.S.C. § 1117.

113.  Plaintiff has no adequate remedy at law.

## COUNT VI – AGAINST I LOVE SUGAR

### [Common Law Unfair Competition and Trade Dress Infringement]

114.  Plaintiff repeats and realleges the averments contained in Paragraphs 1 through 113 of this Complaint as if fully set forth herein.

115.  I Love Sugar's acts constitute unfair competition and trade dress infringement in violation of the common law of the State of South Carolina. I Love Sugar has misappropriated Plaintiff's Trade Dress and the goodwill and reputation associated therewith in a manner which is likely to deceive and confuse the public into mistakenly believing that the I Love Sugar store is affiliated with, sponsored by, licensed by, endorsed by, or is otherwise associated with Plaintiff.

116.  I Love Sugar has acted with knowledge of Plaintiff's rights in Plaintiff's Trade Dress and without regard to the likelihood of confusion to the public created by I Love Sugar's acts.

117.  I Love Sugar's acts demonstrate a willful intent to trade on the goodwill associated with Plaintiff's Trade Dress to the irreparable injury of Plaintiff.

118.   As a direct and proximate result of these activities, Plaintiff has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill.  Such conduct has caused and, unless enjoined, will continue to cause Plaintiff to lose sales to which it would otherwise be entitled.

119.   I Love Sugar's acts are in violation of the common law prohibition against unfair competition.  As a result of I Love Sugar's acts, Plaintiff has been damaged in an amount not as yet determined or ascertainable.  At a minimum, Plaintiff is entitled to injunctive relief, to an award of its actual damages, and to an accounting of any profits enjoyed by I Love Sugar as a result of its unlawful conduct.

120.   Given that I Love Sugar's acts were deliberate and to deter I Love Sugar from future trademark infringement and unfair competition, Plaintiff is entitled to punitive damages.

### COUNT VII – AGAINST MCOY GROUP

**[Contributory Common Law Unfair Competition and Trade Dress Infringement]**

121.   Plaintiff repeats and realleges the averments contained in Paragraphs 1 through 120 of this Complaint as if fully set forth herein.

122.   MCoy's acts constitute contributory unfair competition and trade dress infringement in violation of the common law of the State of South Carolina.  MCoy has misappropriated Plaintiff's Trade Dress and the goodwill and reputation associated therewith in a manner which is likely to contribute to deceiving and confusing the public into mistakenly believing that the I Love Sugar store is affiliated with, sponsored by, licensed by, endorsed by, or otherwise associated with Plaintiff.

123.  MCoy has acted with knowledge of Plaintiff's rights in Plaintiff's Trade Dress and without regard to the likelihood of confusion to the public created by MCoy's acts.

124.  MCoy's acts demonstrate a willful intent to trade on the goodwill associated with Plaintiff's Trade Dress to the irreparable injury of Plaintiff.

125.  As a direct and proximate result of MCoy's acts, Plaintiff has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill.  Such conduct has caused and, unless enjoined, will continue to cause Plaintiff to lose sales to which it would otherwise be entitled.

126.  MCoy's acts are in violation of the common law prohibition against unfair competition.  As a result of MCoy's acts, Plaintiff has been damaged in an amount not as yet determined or ascertainable.  At a minimum, Plaintiff is entitled to injunctive relief, to an award of its actual damages, and to an accounting of any profits enjoyed by MCoy as a result of its unlawful conduct.

127.  Given that MCoy's acts were deliberate and to deter MCoy from future trademark infringement and unfair competition, Plaintiff is entitled to punitive damages.

## COUNT VIII – AGAINST BLU SOL DESIGN

**[Direct and Contributory Common Law Unfair Competition and Trade Dress Infringement]**

128.  Plaintiff repeats and realleges the averments contained in Paragraphs 1 through 127 of this Complaint as if fully set forth herein.

129.  Blu Sol's acts constitute direct and contributory unfair competition and trade dress infringement in violation of the common law of the State of South Carolina.  Blu Sol has

misappropriated Plaintiff's Trade Dress and the goodwill and reputation associated therewith, in a manner which is likely to deceive and confuse the public into mistakenly believing, and has contributed to deceive the public into mistakenly believing, that the I Love Sugar store is affiliated with, sponsored by, licensed by, endorsed by, or otherwise associated with Plaintiff.

130.  Blu Sol has acted with knowledge of Plaintiff's rights in Plaintiff's Trade Dress and without regard to the likelihood of confusion to the public created by Blu Sol's acts.

131.  Blu Sol's acts demonstrate a willful intent to trade on the goodwill associated with Plaintiff's Trade Dress to the irreparable injury of Plaintiff.

132.  As a direct and proximate result of these activities, Plaintiff has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill.  Such conduct has caused and, unless enjoined, will continue to cause Plaintiff to lose sales to which it would otherwise be entitled.

133.  Blu Sol's acts are in violation of the common law prohibition against unfair competition.  As a result of Blu Sol's acts, Plaintiff has been damaged in an amount not as yet determined or ascertainable.  At a minimum, Plaintiff is entitled to injunctive relief, to an award of its actual damages, and to an accounting of any profits enjoyed by Blu Sol as a result of its unlawful conduct.

134.  Given that Blu Sol's acts were deliberate and to deter Blu Sol from future trademark infringement and unfair competition, Plaintiff is entitled to punitive damages.

## COUNT IX – AGAINST I LOVE SUGAR

### [Deceptive Trade Practices Under South Carolina Law]

135.  Plaintiff repeats and realleges the averments contained in Paragraphs 1 through 134 of this Complaint as if fully set forth herein again.

136.  I Love Sugar's acts are deceptive trade practices in violation of the South Carolina prohibition against deceptive trade practices under the South Carolina Unfair Trade Practices Act, S.C. Code § 39-5 *et seq*.

137.  By reason of the foregoing, Plaintiff is being irreparably harmed by I Love Sugar's acts and will continue to be irreparably harmed unless I Love Sugar is enjoined from continuing to commit these acts.

138.  Plaintiff has no adequate remedy at law.

**WHEREFORE**, Plaintiff prays that a judgment be entered:

i.      Preliminarily and permanently enjoining and restraining Defendant I Love Sugar, its officers, directors, agents, servants, employees, representatives, and those persons in active concert or participation with it from using the IT'SUGAR Trade Dress, the Myrtle Beach IT'SUGAR Store Trade Dress, any component of the IT'SUGAR Trade Dress or the Myrtle Beach IT'SUGAR Store Trade Dress, or any combination of components or features confusingly similar thereto, in or on the I Love Sugar store or in or on any other premises.

ii.     Requiring Defendant I Love Sugar to immediately remove and destroy all fixtures, displays, and graphics in the I Love Sugar store and anywhere else that infringe the IT'SUGAR Trade Dress and/or the Myrtle Beach IT'SUGAR Store Trade Dress.

iii.     Requiring Defendant I Love Sugar to immediately remove and destroy the lollipop designs on the exterior of the I Love Sugar store.

iv.     Requiring Defendant I Love Sugar to immediately and permanently discontinue using the store name "I Love Sugar" in conjunction with a lollipop swirl design and to remove all signs, displays, and other documents and materials of any kind using such a combination or any other composite mark confusingly similar to the IT'SUGAR & Lollipop Design Mark.

v.     Preliminarily and permanently enjoining all Defendants, their officers, directors, agents, servants, employees, representatives and those persons in active concert or participation with them from engaging in, or knowingly contributing, assisting, inducing, aiding or abetting any other person or entity in engaging in, any acts of unfair competition, false designation of origin and/or deceptive trade practices in connection with the design, manufacture, sale, offer for sale, distribution, installation, or use of any fixtures, displays, or graphics that infringe the IT'SUGAR Trade Dress and/or the Myrtle Beach IT'SUGAR Store Trade Dress.

vi.     Requiring Defendants to file with this Court and serve on Plaintiff within 30 days after service of any order which requires Defendants to do so, a report in writing under oath which sets forth in detail the manner and form in which Defendants have complied with the orders against them.

vii.     Awarding to Plaintiff its reasonable attorneys' fees.

viii.     Awarding to Plaintiff its taxable costs.

ix.     Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff seeks a jury trial on all issues entitled to be tried by a jury.

Respectfully Submitted,

DATED:  June 17, 2013

*/s/ John Foster*
John Foster
**D.S.C. Federal Bar Attorney ID No. 868**
R. Charles Henn Jr.
*(pro hac vice admission pending)*
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Phone: (404) 815-6500
Fax: (404) 815-6555
jfoster@kilpatricktownsend.com
chenn@kilpatricktownsend.com

Douglas A. Miro
*(pro hac vice admission pending)*
Stephen Quigley
*(pro hac vice admission pending)*
Ostrolenk Faber LLP
1180 Avenue of the Americas
New York, NY 10036
Phone: (212) 382-0700
Fax: (212) 382-0888
dmiro@ostrolenk.com
squigley@ostrolenk.com

*Attorneys for Plaintiff IT'SUGAR LLC*